William C. Chambers, as Assignee for the Benefit of Creditors of Charles A. Dixon, Respondent, v. James .H. Lancaster, and The New York Stone Crushing Company, Appellant.

1. Vendee's Election to Accept Machine Established by Retention after Discovery of Defect. The use of stone crushing machines by the vendee thereof, for the purposes of its business, for five months from their delivery, after a trial had shown that they were defective, may well be deemed to constitute a conclusive election to accept them, although the vendee would have been justified in promptly rejecting them.

2. Action to Recover from Vendee for Machines Furnished by Sub-contractor — Right to Collect Installment of Contract Money Assigned by Contractor to Plaintiff — Immaterial Evidence as to Guaranty of Payment on Part of Vendee. On the review of a trial by the court of an action brought by the assignee for, the benefit of creditors of a sub-contractor for furnishing crushing machines to a company, as part of a contract for constructing a stone crushing plant, to recover from the company the installment of the contract price stipulated to be paid on delivery of the machines, the right to collect which had been assigned by the principal contractor to the plaintiff, the admission of testimony by the sub-contractor that the president of the defendant company had told him that he would guarantee the money, is not to be deemed to have been prejudicial to the defendant, where the plaintiff's recovery did not rest upon any guaranty by the defendant, but was allowed solely upon the ground that the contractor would have been entitled to recover the installment had he not assigned it, and that the plaintiff was entitled to recover thereon as his assignee.

3. Assignment of Part of an Entire Debt. A valid assignment of a part of an entire debt or obligation may be made, and can be enforced by the assignee through a suit on the equity side of the court, making the assignor, as well as the debtor, a party.

4. Corporation — Scope of President's Authority. When the scope of the authority conferred by a corporation upon its president does not appear in terms, his authority may be implied from the power he was accustomed to exercise without the dissent of the company and with its acquiescence.

. 5. Implied Authority to Consent to Division of Contractor's Cause of Action on Contract with Corporation. The existence of power on the part of the president of a stone crushing company to consent to a division of the contractor's cause of action upon a contract for constructing a crushing plant for the company, if the interests of the company in the matter of construction seemed to require it, and to an assign-

ment of a portion thereof, by the contractor to the general assignee of a sub-contractor, may be implied from a general exercise of authority by the president, with the acquiescence of the company, in relation to the construction of the plant.

*Chambers* v. *Lancaster*, 3 App. Div. 215, affirmed.

(Submitted June 23, 1899; decided October 3, 1899.)

APPEAL by the defendant, the New York Stone Crushing Company, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 25, 1896, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff, as assignee for the benefit of the creditors of Charles A. Dixon, against James H. Lancaster and the New York Stone Crushing Company, to recover a balance of $5,000 alleged to be due upon a contract between the company and Lancaster, whereby the latter undertook to construct a stone crushing plant for the company, and agreed, among other things, to furnish two stone crushers, with screen, which portion of the contract, with the knowledge and assent of the president of the company, Lancaster sublet to the plaintiff's assignor, who partly constructed the crushers, which were finished and delivered by the plaintiff, as assignee, who received from Lancaster an assignment of his claim therefor against the company.

The defendant Lancaster did not appear in the action, and no demand of judgment was made against him.

Further facts are stated in the opinion.

*Joseph F. Daly* for appellant. The exceptions taken by the defendant to the rulings permitting the witnesses Lancaster and Dixon to testify to conversations had between them and the president of the company are sound, and the admission of such evidence was prejudicial to the defendant. (*Freedman* v. *Loomis*, 12 Misc. Rep. 156 ; *House* v. *Walch*, 144 N. Y. 418 ; *Strong* v. *Waters*, 80 Hun, 73.) The question whether one installment could be separately assigned and an action commenced on it is a question of law and not a question of

fact. (*Samuel* v. *F. & C. Co.*, 76 Hun, 308; *Tipton* v. *Feitner*, 20 N. Y. 423; *Ming* v. *Corbin*, 142 N. Y. 334.)

*C. L. Waring* for respondent. The appeal should be dismissed, as the unanimous affirmance of a judgment by the Appellate Division is not appealable. (Const. N. Y. art. 6, § 2; Code Civ. Pro. §§ 191, 1337; *People ex rel.* v. *Barker*, 152 N. Y. 436; *Harroun* v. *B. E. L. Co.*, 152 N. Y. 212; *Kaplan* v. *N. Y. B. Co.*, 151 N. Y. 171; *Sackett & W. L. Co.* v. *Comstock*, 153 N. Y. 668; *White* v. *Benjamin*, 150 N. Y. 258; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *Amherst College* v. *Ritch*, 151 N. Y. 320.) The findings of the court upon the questions of fact are conclusive. (*Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Russell* v. *Burton*, 66 Barb. 539; *Clark* v. *Livingstone*, 28 N. Y. S. R. 918; *Weaver* v. *Haviland*, 52 N. Y. S. R. 311; *Cook* v. *Whipple*, 55 N. Y. 165; *A. B. & C. Co.* v. *Gerlach*, 59 N. Y. S. R. 197; *Ostrander* v. *Hart*, 150 N. Y. 406; *Ensign* v. *Ensign*, 120 N. Y. 655; *Matter of Harriot*, 145 N. Y. 545; *Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254.) The motion made to dismiss the complaint on the ground that it appeared from the evidence that the "plant" was not completed, was properly denied. (*Brown* v. *Foster*, 108 N. Y. 387; *Varian* v. *Johnston*, 108 N. Y. 647.) The motion to dismiss the complaint on the ground that the plaintiff did not have an assignment of the entire contract, and that the same cannot be divided, was properly denied. (*O'Beirne* v. *Lloyd*, 43 N. Y. 248; *Secor* v. *Sturgis*, 16 N. Y. 554; *Perry* v. *Dickerson*, 85 N. Y. 345; *Nathans* v. *Hope*, 77 N. Y. 422; *Risley* v. *P. Bank*, 83 N. Y. 318; *Lauer* v. *Dunn*, 23 N. Y. S. R. 374.) A party to the contract can consent to the splitting up of an entire cause of action. (*Cornell* v. *Cook*, 7 Cow. 310; *Gardner* v. *Patten*, 15 N. Y. Supp. 324.) The objection that the agreement with the president of the defendant did not bind the company was properly overruled. (*Curnan* v. *D. & O. R. R. Co.*, 138 N. Y. 488; *Cunningham* v. *M. S. & F. C. R. R. Co.*, 44 N. Y. S. R. 723; *U. S. Nat. Bank* v. *Home-*

*stead Bank*, 46 N. Y. S. R. 173 ; *C. Nat. Bank* v. *Kohner*, 85 N. Y. 189.) The plaintiff's right to recover cannot be defeated by the defendant alleging that the work was not done to the satisfaction of its president. (*Doll* v. *Noble*, 116 N. Y. 230 ; *Varian* v. *Johnston*, 108 N. Y. 647.) The defendant cannot defeat a recovery by claiming that, after the crushers were broken, it offered to return them to the plaintiff, and thereby rescinded the contract. (*Cohen* v. *Ellis*, 23 N. Y. S. R. 420 ; *Andrews* v. *White*, 45 N. Y. S. R. 669; *Cobb* v. *Hatfield*, 46 N. Y. 533 ; *Graham* v. *Meyer*, 99 N. Y. 611 ; *Wallace* v. *V. O. Co.*, 35 N. Y. S. R. 697 ; *Wilson* v. *Kings Co. E. R. R. Co.*, 114 N. Y. 487 ; *Cruikshank* v. *Gordon*, 118 N. Y. 178 ; *Baber* v. *B. S. A. R. Co.*, 68 N. Y. S. R. 95.)

PARKER, Ch. J. A unanimous affirmance by the Appellate Division of the facts found by the trial court conclusively establishes, for the purposes of this review, that : On the 2nd day of February, 1894, the New York Stone Crushing Company, through its president and secretary, entered into a contract with the defendant James H. Lancaster, whereby Lancaster was to furnish certain machinery to be used in the plant of such company at Bergen county, New Jersey, including among other things two stone crushers, to be known respectively as numbers 6 and 8, with screen. The machinery and appliances to be furnished and erected were to be made and put up in accordance with blue prints and specifications, which accompanied and formed a part of the contract, and the price agreed upon to be paid therefor was the sum of $15,000. Payment was provided to be made in seven installments, and the third provision for payment was as follows : " $6,000 upon delivery of the two Crushers and screen and receipted freight bills ; $3,000 of which is to be in cash, and $3,000 in notes signed by the party of the second part, payable ninety days after delivery." Lancaster, with the knowledge and consent of the president of the defendant, sub-contracted with one Charles A. Dixon to

44

furnish the crushers and screen, it being agreed between them that Lancaster should, upon the completion of the work by Dixon, assign to him the right to collect the $6,000 that the New York Stone Crushing Company had agreed to pay to Lancaster upon the delivery of the crushers and screen constructed and put up in conformance with the contract. The president of the company assented to this, as appears not only from the testimony of Lancaster and Dixon, but also from the president's own evidence. Dixon thereupon entered upon the performance of his contract with Lancaster to deliver the crushers and screen and in due course completed it, whereupon the New York Stone Crushing Company at once commenced to use the machinery and continued to use it to as great an extent as frequent breakdowns would permit, for a period of about five months. Dixon made a general assignment for the benefit of his creditors to this plaintiff, who subsequently and after the assignment of the claim that Lancaster had against the stone company for the $6,000, received on account thereof the sum of $1,000, leaving unpaid thereon the sum of $5,000. The New York Stone Crushing Company, claiming that Lancaster had not performed his contract, in that among other things the stone crushers were comparatively worthless, refused to pay the plaintiff the said sum of $5,000, whereupon this suit was brought, in which Lancaster and the New York Stone Crushing Company were made parties defendant.

The case appears to have been tried by the plaintiff in part upon the theory that Dixon's contract with Lancaster having been performed, he was entitled by reason of the guaranty of the president of the defendant to recover the balance of the installments of the $6,000, which was to be paid upon the delivery of the two crushers and screen, whether Lancaster's contract with the stone company had been fully performed or not. There is nothing in the findings of the trial court to indicate that the judge was at all impressed with that view, while the learned Appellate Division makes it clear that it was of the opinion that this plaintiff's right in the premises was no greater or other than that of Lancaster, and it was held

that the plaintiff stood in Lancaster's shoes and was bound to show that he was entitled to recover in order to support the plaintiff's claim for judgment as his assignee. The court reached the conclusion that the stone crushing company might have properly rejected the crushers as not in compliance with its contract with Lancaster; and had it done so this plaintiff would not be entitled to recover. It appears, however, that the company, instead of rejecting the crushers with reasonable promptness, kept them for a period of five months, using them every day when they were in a condition to be used. Such defects as there were in the machines, while not appearing on inspection, were disclosed at the very outset of their use by the defendant, but it repaired them from time to time as they broke down and used them for this long period of time. The court reached the conclusion that the use of the machines for the purposes of the company for so long a period as five months, after a trial had shown that they were defective, was a conclusive election to accept them within the doctrine as laid down by this court in *Brown* v. *Foster* (108 N. Y. 387).

With that view we are agreed, and this brings us to the exceptions, which the defendant company insists point out reversible error committed on the trial. The assignor, Dixon, was asked by plaintiff's counsel this question : " Did you have a conversation with the president of the defendant in regard to your getting the money direct from the stone crushing company ? " and against the defendant company's objection and exception the witness answered : " Mr. Treanor said he would guarantee it." It is difficult to see how this evidence could at all have prejudiced the rights of the defendant. The judgment does not rest upon any guaranty of the defendant. On the contrary, as we have seen, the plaintiff's recovery of this installment of the contract price has been allowed solely upon the ground that the contractor, Lancaster, would have been entitled to recover had he not assigned it, and that this plaintiff is entitled to recover thereon as his assignee.

Objection was also made to the testimony of the witnesses

Dixon and Lancaster, wherein they undertook to give conversations had between the president of the company and themselves relating to the matter of sub-contracting to Dixon as to the construction and delivery of the crushers and screen, by which it appears that the president, who executed the contract with Lancaster and had charge of its fulfillment, consented not only to the performance of that portion of the work by Dixon, but to the assignment of Lancaster's right to receive payment of the sum of $6,000 provided by the contract for such portion of the work as Dixon performed. This testimony only bore upon the question of plaintiff's right to recover that which was but a part of an entire cause of action. This the defendant company insists the plaintiff cannot do. Such was formerly the rule, but it has long been settled in this state that a valid assignment of a part of an entire debt or obligation can be made, and since the decision of this court in *Risley* v. *Phenix Bank of New York* (83 N. Y. 318) the right of an assignee to bring suit on the equity side of the court, making the assignor, as well as the debtor, a party, has been frequently resorted to, and is supported by the decision in *Risley's* case, the court saying : " The tendency of modern decisions is in the direction of more fully protecting the equitable rights of assignees of choses in action, and the objection that to allow an assignment of part of an entire claim might subject the creditor to several actions to enforce a single obligation, has much less force under a system which requires all parties in interest to be joined as parties to the action."

The procedure thus pointed out was adopted in this case and, therefore, the judgment need not be rested upon the testimony of witnesses establishing that the defendant company consented to the splitting up of the causes of action. But, in any event, the objections were not well taken. The right of the defendant company, after the making of the contract, to enter into an agreement by which Lancaster was to sublet a part of the work to Dixon, and the company was to pay Dixon instead of Lancaster the agreed compensation for such work, is not questioned, and, of course, cannot be. It follows, of

course, that either party to such a contract had the right to prove its existence, and inasmuch as it was not reduced to writing to prove it by the persons who made it, and that is what the plaintiff did. But the defendant company urges that there was no proof that the president of the company had any authority to make such an agreement binding the company. The scope of the authority conferred by the corporation upon its president, Mr. Treanor, does not appear in terms, but his authority may be implied from the power he was accustomed to exercise without the dissent of the company and with its acquiescence. (*Curnan* v. *D. & O. R. R. Co.*, 138 N. Y. 480.) What authority did he exercise with reference to the construction of this plant? We find, in the first place, that he had a talk with Mr. Lancaster about such plant, at which time he disclosed that he had discovered work of Mr. Lancaster's that indicated special knowledge upon the subject. In due course a basis for an agreement was found, and subsequently a written contract was executed in behalf of the corporation, the president and secretary executing it. Thereafter, either in person or through his brother, the president superintended the work of construction, and orally approved the sub-letting of a portion of the work to Dixon, and he personally testifies that he informed Mr. Dixon touching the payments, that " we would see that Mr. Lancaster would not get the better of him." The authority exercised by him with the acquiescence of the company, in relation to the construction of the plant, implied an existence of the power on the part of the president to consent to a division of the cause of action, if the interests of the company in the matter of construction seemed to require it, and an assignment of a portion thereof to this plaintiff.

Other exceptions are brought to our attention, but they need not be discussed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.